HERSEY, Judge.
The issue on appeal is whether an insurance policy under which appellant filed a claim as lienholder provided “credit insurance” within the meaning of the exclusion from coverage contained in section 631.52, Florida Statutes (1985).
Moody Aviation, Inc. borrowed money from appellant, Commercial Credit Equipment Corp., and gave back a security interest in a Cessna aircraft. As part of this transaction Moody purchased insurance from Ideal Mutual Insurance Co. on which appellant was listed as the loss payee (except for a one year period, but this omission is not relevant to our determination). The plane was lost. The insurance company became insolvent. Appellant gave notice to the Florida Department of Insurance and thereafter filed a proof of claim with the Florida Insurance Guaranty Association (FIGA). Upon the latter’s refusal to pay, appellant brought this action. The matter went to trial and at the close of the plaintiff’s case the trial court directed a verdict for the Florida Insurance Guaranty Association. The basis for the directed verdict was that insofar as the interest of appellant, Commercial Credit, was covered by the policy, that coverage constituted credit insurance. The statute specifically excluded credit insurance from coverages which FIGA is required to provide and therefore the defendant, appellee, was entitled to a verdict. This appeal followed.
The applicable statute is section 631.52, Florida Statutes (1985), which is part of the Florida Insurance Guaranty Association Act. The purposes of the act are to:
(1)Provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer;
(2) Assist in the detection and prevention of insurer insolvencies;
(3) Create a nonprofit corporation to administer and supervise the operation of such association; and
(4) Assess the cost of such protection among insurers.
Section 631.51, Fla.Stat. (1985). However, appellee’s obligations under the act are limited somewhat under section 631.52, which provides:
Scope. — This part shall apply to all kinds of direct insurance except life, title, surety, disability, credit, mortgage guaranty, surplus lines, warranty, motor vehicle service, ambulance service, optometric service plan, pharmaceutical service plan, dental service plan, preneed funeral merchandise or service, health care service, health maintenance, prepaid health clinic, legal expense, ocean marine, and wet marine insurance and self-insurance.
(Emphasis added.)
(While not applicable to the case at hand, it is nevertheless significant to note that the legislature in 1987 amended this section to expressly exclude “collateral protection insurance or any similar insurance protecting the interests of a creditor arising out of a creditor-debtor transaction.” § 631.52, Fla.Stat. (1987). Appellant admits that were the 1987 version of the statute applicable to the instant case, appellee would not be obligated to them for the loss of the airplane.)
The question upon which this appeal hinges is whether the insurance policy at hand was “credit insurance” excluded from appellee’s coverage by section 631.52. “Credit” insurance is defined in the Florida Insurance Code as follows:
Credit. — Insurance against loss or damage resulting from failure of debtors to pay their obligations to the creditor (including loss or damage resulting from the involuntary unemployment of the debtors), except insurance against loss or damage resulting from the death or disability of the debtors.
Section 624.605(l)(i), Fla.Stat. (1985).
The usual form of “credit insurance” is that, for a stated premium paid by the *374 insured, the insurer guarantees the payment, in whole or in part, of the account which the insured has listed under the policy. 9 J. Appleman, Insurance Law and Practice, § 5241 (1981), n. 1 at page 126; Manhattan Factoring Corp. v. Orsburn, 238 Ark. 947, 885 S.W.2d 785, 789 (1965). Additionally, credit insurance policies typically cover only overdue or uncollectible accounts and do not provide asset protection coverage. See Enterprise Tools, Inc. v. Export-Import Bank of U.S., 799 F.2d 437 (8th Cir.1986), cert. denied, 480 U.S. 931, 107 S.Ct. 1569, 94 L.Ed.2d 761 (1987).
Because credit insurance relates strictly to indemnification of the insured for certain types of overdue accounts, it is clear that the instant policy is not credit insurance. The policy is labeled as an “aircraft policy” and Ideal Mutual agreed to insure against loss or damage to the aircraft, with appellant listed as the loss-payee. Nowhere in the policy is there any provision providing coverage in the event that Moody defaulted in his agreement with appellant. Only if the policy contained such a provision could it be considered “credit insurance.” The trial court therefore erred in directing a verdict.
Appellee also argues that (1) because the loss occurred in Nassau, the airplane was beyond the territorial limits of the policy and there was no coverage; (2) Moody did not give timely notice of the loss, thus there is no coverage; (3) Moody’s obligation to appellant was satisfied. Because we find no merit in any of these contentions, we have omitted reference to the specific facts upon which each of them is predicated. Suffice to say we are persuaded of the merits of appellant’s arguments as to each of these points on appeal.
For the reasons indicated, we reverse the judgment based upon a directed verdict and remand for further appropriate proceedings.
REVERSED AND REMANDED.
DOWNEY and DELL, JJ., concur.